# Order

**Michigan Supreme Court**
**Lansing, Michigan**

November 9, 2012

145961-2 & (15)(16)(17)

Robert P. Young, Jr.,
Chief Justice

Michael F. Cavanagh
Marilyn Kelly
Stephen J. Markman
Diane M. Hathaway
Mary Beth Kelly
Brian K. Zahra,
Justices

AFT MICHIGAN, AFT, AFL-CIO,
ALPENA MONTMORENCY-ALCONA ISD
PARAPROFESSIONALS, ALPENA
MONTMORENCY-ALCONA ISD TEACHERS,
ARENAC EASTERN FEDERATION, BAY
ARENAC SKILLS CENTER FEDERATION,
BROWN CITY EMPLOYEES ORGANIZATION,
BROWN CITY FEDERATION OF TEACHERS,
CHEBOYGAN OTSEGO PRESQUE ISLE
INTERMEDIATE PARAPROFESSIONAL AND
BUS PERSONNEL, CHEBOYGAN-OTSEGO
PRESQUE ISLE ISD TEACHERS,
CHEBOYGAN-OTSEGO PRESQUE ISLE
SUPPORT PERSONNEL, CHESANING
UNION AUXILIARY SERVICE EMPLOYEES,
CLARE-GLADWIN ISD FEDERATION,
CRAWFORD AUSABLE BUS DRIVERS
FEDERATION, CRAWFORD AUSABLE
CUSTODIANS/SECRETARIAL FEDERATION,
CRAWFORD AUSABLE SUPPORT STAFF
FEDERATION, CRAWFORD AUSABLE
FEDERATION OF TEACHERS, CRESTWOOD
FEDERATION OF TEACHERS, DEARBORN
FEDERATION OF SCHOOL EMPLOYEES,
DEARBORN FEDERATION OF TEACHERS,
DETROIT ASSOCIATION OF EDUCATIONAL
OFFICE EMPLOYEES, DETROIT
FEDERATION OF PARAPROFESSIONALS,
DETROIT FEDERATION OF TEACHERS,
EAST DETROIT FEDERATION OF TEACHERS,
ECORSE FEDERATION OF TEACHERS,
FAIRVIEW FEDERATION OF TEACHERS,
GLEN LAKE FEDERATION OF TEACHERS,
HALE FEDERATION OF TEACHERS,
HAMTRAMCK FEDERATION OF TEACHERS,
HEMLOCK AUXILIARY SERVICE
EMPLOYEES, HEMLOCK FEDERATION OF
TEACHERS, HENRY FORD COMMUNITY
COLLEGE ADJUNCT FACULTY
ORGANIZATION, HENRY FORD
COMMUNITY COLLEGE FEDERATION OF
TEACHERS, HIGHLAND PARK
FEDERATION OF PARAPROFESSIONALS,
HIGHLAND PARK FEDERATION OF
TEACHERS, IMLAY CITY FEDERATION OF
TEACHERS, INKSTER FEDERATION OF
TEACHERS, IOSCO ISD INTERMEDIATE
FEDERATION OF AUXILIARY EMPLOYEES,
IOSCO ISD FEDERATION OF TEACHERS,

KINGSLEY FEDERATION OF TEACHERS KIRTLAND COMMUNITY COLLEGE FEDERATION OF TEACHERS, LAKE CITY SUPPORT STAFF FEDERATION, LAKE CITY TEACHERS & PARAPROFESSIONALS FEDERATION, LAKE SHORE FEDERATION OF EDUCATIONAL SECRETARIES, LAKE SHORE FEDERATION SUPPORT STAFF, LAKE SHORE FEDERATION OF TEACHERS, LAMPHERE FEDERATION OF PARAPROFESSIONALS, LAMPHERE FEDERATION OF TEACHERS, LANSING COMMUNITY COLLEGE ADMINISTRATIVE ASSOCIATION, LES CHENEAUX FEDERATION OF SUPPORT STAFF, LES CHENEAUX FEDERATION OF TEACHERS, MACOMB INTERMEDIATE FEDERATION OF PARAPROFESSIONALS, MACOMB INTERMEDIATE FEDERATION OF TEACHERS, MELVINDALE/NAP PARAPROFESSIONALS, MELVINDALE/NAP FEDERATION OF TEACHERS, MIDLAND FEDERATION OF PARAPROFESSIONALS, MIDLAND ISD FEDERATION OF PARAPROFESSIONALS, MIDLAND ISD FEDERATION OF TEACHERS, NORTHVILLE FEDERATION OF PARAPROFESSIONALS, ONAWAY FEDERATION OF SCHOOL RELATED PERSONNEL, ONAWAY FEDERATION OF TEACHERS, PLYMOUTH-CANTON COMMUNITY SCHOOLS SECRETARIAL UNIT, PLYMOUTH-CANTON FEDERATION OF PLANT ENGINEERS, ROMULUS FEDERATION OF PARAPROFESSIONALS, ROSEVILLE FEDERATION OF TEACHERS, RUDYARD FEDERATION OF AIDES, RUDYARD FEDERATION OF TEACHERS, SAGINAW ISD FEDERATION OF TEACHERS, TAWAS AREA FEDERATION OF TEACHERS, TAYLOR FEDERATION OF TEACHERS, UTICA FEDERATION OF TEACHERS, VAN DYKE EDUCATIONAL ASSISTANTS FEDERATION, VAN DYKE PROFESSIONAL PERSONNEL, WARREN WOODS FEDERATION OF PARAPROFESSIONALS, WASHTENAW INTERMEDIATE SCHOOL EMPLOYEES FEDERATION, WATERFORD ASSOCIATION OF SUPPORT PERSONNEL, WAYNE COUNTY COMMUNITY COLLEGE PROFESSIONAL & ADMINISTRATIVE ASSOCIATION, WAYNE COUNTY COMMUNITY COLLEGE FEDERATION OF

TEACHERS, WAYNE COUNTY RESA
SALARIED STAFF, WEXFORD- MISSAUKEE
ISD FEDERATION OF TEACHERS,
WHITEFISH TOWNSHIP FEDERATION OF
TEACHERS,
        Plaintiffs-Appellees,

v                                     SC: 145961
                                     COA: 312260
                                     Ct of Claims: 12-000104-MM

STATE OF MICHIGAN,
        Defendant-Appellant.

_____/

MICHIGAN EDUCATION ASSOCIATION,
        Plaintiff-Appellee,

v                                       SC: 145962
                                     COA: 312261
                                     Ct of Claims: 12-000105-MM

MICHIGAN PUBLIC SCHOOL
EMPLOYEES RETIREMENT SYSTEM,
MICHIGAN PUBLIC SCHOOL
EMPLOYEES RETIREMENT SYSTEM
BOARD, TRUST FOR PUBLIC EMPLOYEE
RETIREMENT HEALTH CARE FUNDING
FOR MEMBERS OF THE MICHIGAN PUBLIC
SCHOOL EMPLOYEES RETIREMENT
SYSTEM, MICHIGAN DEPARTMENT OF
TECHNOLOGY, MANAGEMENT & BUDGET,
DIRECTOR OF THE MICHIGAN
DEPARTMENT OF TECHNOLOGY,
MANAGEMENT & BUDGET, DIRECTOR OF
THE OFFICE OF RETIREMENT SERVICES
OF THE MICHIGAN DEPARTMENT OF
TECHNOLOGY, MANAGEMENT & BUDGET,
and TREASURER OF THE STATE OF
MICHIGAN,
        Defendants-Appellants.

_____/

On order of the Court, the motions for immediate consideration and to waive the requirements of MCR 7.302(I) and MCR 7.209(A)(2) and (3) are GRANTED. The motion for stay of the Court of Claims orders of September 4, 2012 and September 5, 2012 is DENIED. The application for leave to appeal prior to decision by the Court of Appeals is considered, and it is DENIED, because the Court is not persuaded that the question presented should be reviewed by this Court before consideration by the Court of Appeals.

MARKMAN, J. (*dissenting*).

I respectfully dissent and would grant the application to bypass the Court of Appeals. MCR 7.302(B)(4) provides that, "in an appeal before decision by the Court of Appeals," an applicant for leave to appeal in this Court must show that

> (a) delay in final adjudication is likely to cause substantial harm, or

> (b) the appeal is from a ruling that a provision of the Michigan Constitution, a Michigan statute, a rule or regulation included in the Michigan Administrative Code, or any other action of the legislative or executive branch of state government is invalid[.]

Defendants, in my judgment, have made a substantial showing under both (a) and (b). First, the temporary restraining orders (TROs) issued by the trial court are likely to cause substantial harm in the form of multi-million-dollar losses to the school employee pension and healthcare funds. Defendants estimate that if the statute at issue here, 2012 PA 300, does not go into effect, the Michigan Public School Employees Retirement System (MPSERS) will be underfunded by $200 million in the current fiscal year alone. Plaintiffs contend that allowing lower-court review to run its course will not result in a full year of delays and that defendants thus overstate the financial harm that will be caused by the TROs. But even assuming a more expeditious resolution, MPSERS will still be underfunded at a rate of more than $16 million a month. Second, it is clear that the TROs have effectively invalidated — albeit temporarily — a duly enacted statute of our Legislature. The trial court judge has unilaterally suspended the enforcement of the selection period prescribed by 2012 PA 300. Under both subdivisions (a) and (b) of MCR 7.302(B)(4), therefore, bypass review is appropriate. Indeed, it seems that MCR 7.302(B)(4) was promulgated precisely for the purpose of expediting review in cases like this one.

I also believe the trial court clearly erred in issuing the TROs. In determining whether to issue a TRO, a trial court should consider four factors: (1) whether the applicant will suffer irreparable harm if the TRO is not granted, (2) the likelihood that the applicant will prevail on the merits, (3) harm to the public interest if the TRO issues, and (4) whether the harm to the applicant in the absence of a TRO outweighs the harm to the opposing party if a TRO is granted. See *Mich Coalition of State Employee Unions v Civil Serv Comm*, 465 Mich 212, 241 (2001).

There was really little danger of irreparable harm here. If 2012 PA 300 were allowed to go into effect, and then later invalidated, the appropriate remedy for those school employees who had made benefits elections under the statute would be to allow them to opt back out of the healthcare and pension elections they had made. This would be accomplished by restoring their previous benefits and refunding any applicable

monies. The only harm to school employees would be financial and thus fully compensable. In fact, the trial court judge acknowledged that appropriate relief could be granted after the fact, noting that the courts could "let [2012 PA 300 go into effect] and fix it later."

Additionally, it is unlikely, in my view, that plaintiffs will prevail on the merits. For starters, "[s]tatutes are presumed to be constitutional, and courts have a duty to construe a statute as constitutional unless its unconstitutionality is clearly apparent." *In re Request for Advisory Opinion Regarding Constitutionality of 2011 PA 38*, 490 Mich 295, 307 (2011) (quotation marks and citation omitted). The Legislature enacted 2012 PA 300 in response to constitutional challenges brought against 2010 PA 75, which had itself amended the Public School Employees Retirement Act, MCL 38.1301 *et seq*., to require all members of that retirement system to contribute up to 3 percent of their salaries to a trust fund for retiree healthcare. It appears that the Legislature took the constitutional challenges to 2010 PA 75 to heart and was particularly determined to craft 2012 PA 300 in a way that would withstand constitutional scrutiny. I believe the Legislature has probably succeeded.

In *Studier v Mich Pub Sch Employees' Retirement Bd*, 472 Mich 642 (2005), we held that school employee retiree healthcare benefits are not guaranteed by contract and do not constitute an accrued benefit protected from impairment or diminution by the pension clause of the state constitution or the contract clauses in the state and federal constitutions. Additionally, unlike 2010 PA 75, 2012 PA 300 gives school employees the choice to either contribute 3 percent of their salaries to maintain entitlement to healthcare coverage as a retiree or opt out of the retirement healthcare coverage system.

Similarly, in regard to pensions, 2012 PA 300 gives school employees a choice among three options: (1) pay a percentage of their salaries in order to continue receiving service credit at 1.5 percent per year, (2) decline to make the salary-percentage payment and accrue credit at the reduced rate of 1.25 percent a year, or (3) freeze their defined-benefit entitlement as of December 1, 2012, and thereafter participate in a defined-contribution system in which the employer matches contributions up to 4 percent of compensation. Under none of these scenarios do the school employees lose any of the pension benefits already accrued to them. Thus, the pension clause is not violated. "The deferred compensation protected as a contractual obligation by [Const 1963, art 9,] § 24

[the pension clause] is the pension payments themselves *earned* by the retiree . . . ." *In re Advisory Opinion*, 490 Mich at 317 (quotation marks omitted; emphasis added).

I also do not see any constitutional infirmities in the implementation schedule set forth in 2012 PA 300. School employees originally had 52 days between the enactment of 2012 PA 300 and the October 26, 2012, deadline to make their decision as to which healthcare and pension options to select. As defendants have pointed out, other recently enacted retirement system reform legislation has utilized shorter windows of time without ill effect. Of course, given the unfortunate procedural developments in this case to date, new election deadlines will now have to be set should 2012 PA 300 ultimately go into effect.

In short, I believe that 2012 PA 300 will ultimately be found constitutional and that, at any rate, even if the statute is invalidated, no irreparable harm will occur to plaintiffs if the statute is allowed to go into effect in the meantime. Regarding the third and fourth TRO factors to be considered by the trial judge, I believe the public has a strong interest in ensuring that the statutes enacted by its elected Legislature are put into effect. The public also has an interest in avoiding massive MPSERS funding shortfalls. Finally, the potential harm to plaintiffs in the absence of the TROs here — if indeed there is any legally cognizable harm to them at all — does not outweigh the harm to defendants caused by the TROs.

Given all this, we should not allow a single trial court judge to unilaterally halt the implementation of a statute duly enacted by the Legislature (the democratic representatives of the *entire* state) and signed by the Governor on such questionable grounds. Judicial intervention in the affairs of the executive in a way that essentially forbids the latter to exercise its executive power always "raises a question 'of considerable delicacy, as it requires one of the co-ordinate branches of the government to pass its judgment on the acts of another, and the presumption is that the executive department has the same desire to keep within constitutional limits as either of the other two.'" *Smith v Dep't of Human Servs Dir*, 491 Mich 898, 898 (2012) (MARKMAN, J., dissenting), quoting *Dullam v Willson*, 53 Mich 392, 397 (1884). When, as here, a lone judge has acted to frustrate both the executive and legislative branches and fails to present persuasive — let alone compelling — reasons for doing so, this Court should intervene to correct such overreaching.

For these reasons, I respectfully dissent.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

November 9, 2012 _____      _____

t1106                                                            Clerk